UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | § <br> § |
| v. | § <br> § |
| PAUL M. DAUGERDAS, <br> DONNA GUERIN, <br> DENIS FIELD, and <br> DAVID PARSE, | §    S3 No. 09 Cr. 581 (WHP) <br> § <br> § <br> § <br> § |
| Defendants. | § |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
DAVID PARSE'S MOTION FOR A NEW TRIAL BASED
ON INEFFECTIVE ASSISTANCE OF COUNSEL

## **TABLE OF CONTENTS**

                                               **PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

A.  Factual Background ............................................................................................ 1

B.  Discussion ........................................................................................................... 2

    1.  Legal Principles ..................................................................................... 2

    2.  Deficient Performance .......................................................................... 3

    3.  Prejudice ............................................................................................... 7

CONCLUSION ....................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**PAGE**

Bierenbaum v. Graham, 607 F.3d 36 (2d Cir. 2010) ........................................................2

Bohan v. Kulmann, 234 F. Supp. 2d 231 (S.D.N.Y. 2002) .......................................... 6-7

Breakiron v. Horn, 642 F.3d 126 (3d Cir. 2011) ......................................................... 5-6

Chappee v. Vose, 843 F.2d 25 (1st Cir. 1988)..................................................................6

Cornell v. Kirkpatrick, 665 F.3d 369 (2d Cir. 2011) ......................................................3

Cuyler v. Sullivan, 446 U.S. 335 (1980)..........................................................................3

Johnson v. Armontrout, 961 F.2d 748 (8th Cir. 1992) ................................................5, 7

Parker v. Gladden, 385 U.S. 363 (1966).........................................................................7

Strickland v. Washington, 466 U.S. 66 (1984) .......................................................3, 4, 9

United States v. Bolinger, 837 F.2d 436 (1st Cir. 1988) .................................................4

United States v. Boyd, 86 F.3d 719 (7th Cir. 1996) ........................................................3

United States v. Brown, 623 F.3d 104 (2d Cir. 2010) .....................................................1

Virgil v. Dretke, 446 F.3d 598 (5th Cir. 2006)................................................................8

Wilson v. Mazzuca, 570 F.3d 490 (2d Cir. 2009)............................................................3

This memorandum is respectfully submitted in support of David Parse's motion for a new trial based on ineffective assistance of counsel.[1]

A.   Factual Background

On June 4, 2012, the Court granted defendants Paul Daugerdas, Donna Guerin and Denis Field a new trial on the ground that Juror No. 1, Catherine M. Conrad, was biased in favor of the government and therefore should not have sat on the jury. The Court, however, ruled that David Parse was not entitled to a new trial. It found that Mr. Parse's trial lawyers had waived his right to an impartial jury by not disclosing information in their possession that could have led to Conrad's excusal for cause.[2]

As to Conrad, the Court found these facts: (i) that she had lied repeatedly on voir dire to make herself more "marketable" as a juror and that if her true identity had been known, she would have been stricken for cause (Op. 37); (ii) that she had a "pre-existing bias against lawyers" (id. at 40); (iii) that she was "incapable of weighing evidence, measuring credibility and applying the law as instructed by th[e] Court" (id. at 44); (iv) that she likely suffered from "significant mental instability," which was "exacerbated by many years of alcohol abuse" (id. at 47-48); and (v) that she "saw herself not as a fact-finder, but as a partisan for [the] Government" (id. at 40-41). These findings led the Court to conclude that Conrad had "no business sitting on a jury in judgment of others." (Id. at 48); see also id. at 39 ("Conrad is a pathological liar and utterly untrustworthy").

---

[1] It is now settled that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." United States v. Brown, 623 F.3d 104, 113 (2d Cir. 2010).

[2] For the purpose of this motion, we accept the facts as found in the Court's opinion.

The Court found that Conrad sat in judgment of Mr. Parse because his lawyers had failed to disclose that they "knew -- or with a modicum of diligence would have known" -- about her misconduct. (Op. 49). Specifically, the Court found: (i) that one of Mr. Parse's attorneys "was aware during trial that Juror No. 1 was the suspended New York attorney Catherine M. Conrad" (id. at 59); (ii) that even if Mr. Parse's attorneys did not have actual knowledge, they failed to exercise reasonable diligence that would have led to the discovery of Conrad's falsehoods; and (iii) that at a minimum, the lawyers "should have raised their concerns with the Court." (Id. at 60). Based on these findings, the Court concluded that Mr. Parse's lawyers had waived his right to an impartial jury.[3]

B.    Discussion

As discussed below, Mr. Parse's lawyers' conduct in not disclosing to the Court the information in their possession about Catherine Conrad constituted ineffective assistance of counsel.

1.    Legal Principles

The guiding legal principles on a motion for a new trial based on ineffective assistance of counsel are well settled. To establish ineffective assistance, a defendant must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Bierenbaum v. Graham, 607 F.3d 36, 50 (2d Cir. 2010). To satisfy the "performance" prong, "the record must demonstrate that

---

[3] In its opinion, the Court noted that a defendant "can waive certain rights through the actions of his attorneys, even if the defendant himself was unaware of the circumstances giving rise to the waiver." (Op. 50). The hearing record was silent as to what Mr. Parse knew about Conrad. To fill that gap, we have included with this motion an affidavit from Mr. Parse. It demonstrates that he did not participate in a decision not to inform the Court. See Parse Aff. ¶¶ 1, 4.

2

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009). Such errors "include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." Cornell v. Kirkpatrick, 665 F.3d 369, 377 (2d Cir. 2011). To demonstrate prejudice, there must be a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 66, 694 (1984). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." Id.

Finally, it bears emphasis that a finding that a lawyer has waived his client's rights does not preclude a claim for ineffective assistance of counsel arising from the lawyer's conduct. As Judge Easterbrook has observed, "[i]neffective assistance of counsel . . . avoid[s] the waiver because a deficient lawyer's acts are attributed not to the accused [as is true in waiver analysis] but to the government." United States v. Boyd, 86 F.3d 719, 722 (7th Cir. 1996), citing Cuyler v. Sullivan, 446 U.S. 335, 343 (1980)("[w]hen a State obtains a criminal conviction through . . . a trial [in which a defendant's counsel is ineffective], it is the State that unconstitutionally deprives the defendant of his liberty"). Thus, findings of waiver and of ineffective assistance can coexist on the same record.

2.   Deficient Performance

Based on the Court's findings, there should be little doubt that trial counsel's performance was deficient. Trial counsel "failed to exercise reasonable diligence by deciding not to do additional research or investigation and deciding not to notify the Court when faced with mounting evidence that Juror No. 1 was a suspended New York attorney," (Op. 61), with

3

the result that a government partisan was left on the jury. As the Court found, a reasonably competent lawyer on learning that Juror No. 1 might be a suspended lawyer with a history of alcoholism would have taken some action to resolve the issue. She would have conducted additional research, consulted with the government, or, most obviously, alerted the Court so that it could inquire further. See United States v. Bolinger, 837 F.2d 436, 439 (1st Cir. 1988)("enough information was relayed that counsel should have contacted the district court for instructions"). Choosing to do nothing was not a viable option. See Strickland, 466 U.S. at 691 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary").

Even if one of Mr. Parse's lawyers could be said to have been "aware during trial that Juror No. 1 was the suspended New York attorney Catherine M. Conrad," (Op. 59), that does not change the analysis. Whatever else may be true, that lawyer's decision not to disclose information to the Court or to investigate further was hardly a "strategic" one. What the record shows is that the lawyer did not tell her more senior colleagues all of the facts in her possession (e.g., the Westlaw report) and that she quickly acquiesced in their ill-informed determination that no further investigation was warranted. See Op. 34 ("their discussion was superficial and never addressed any of the information accumulated over the last twelve hours"). Never did the lawyers discuss the possibility that if Juror No. 1 was the suspended lawyer, she should be left on the jury because she might favor the defense or be a wild card who could prevent a unanimous verdict.[4] There was no strategy at all. Rather, believing that it was "inconceivable" that Conrad had lied in her voir dire responses, Mr. Parse's lawyers chose to "shut down further inquiry" and

---

[4]   Notably, the defense jury consultant expressed the strong belief that if Juror No. 1 was a suspended lawyer with an alcoholism history, "you do not want this lady on your jury." (Hearing Tr. 262).

4

not bring the issue to the Court. (Op. 31). As the Court found, that was a "tragic misjudgment," for it resulted in a tainted juror being left on the jury.

The decision in Johnson v. Armontrout, 961 F.2d 748 (8th Cir. 1992), is on point. There, Johnson and Denny were arrested for a gunpoint robbery, and Denny was tried first and convicted. When Johnson's venire was assembled, it included 10 members of Denny's jury. Although those jurors had heard damaging testimony against Johnson (and apparently seen him in shackles), his counsel did not move to strike them for cause, and four of the 10 were seated. Counsel "relied on the jurors' silence [in response] to two general questions" about whether they could decide Johnson's fate solely on the evidence in his trial. Id. at 755. Their silence, counsel concluded, prevented a successful challenge for cause.

On this record, the Eighth Circuit concluded that defense counsel had "failed to exercise the customary skill and diligence that a reasonably competent attorney would provide." Id. at 754. It expressly rejected the prosecution's claim that counsel's failure to request for-cause removal of the "recycled jurors" was a strategic decision. Counsel's conduct was not strategic, but a misjudgment. His failure to question the jurors or take some action to ensure that they were not tainted was outside the range of sound advocacy.

Much the same is true here. Just as the Denny jurors' silence lulled Johnson's lawyer into believing that they could not be excused for cause, the belief that Conrad could not conceivably be lying lulled Mr. Parse's lawyers into not alerting the Court to what they knew. Op. 31 ("[o]n that slender reed, they unilaterally decided that no further investigation was necessary"). Being lulled into inaction when action is called for is not strategic decision-making to which a court should defer. See also Breakiron v. Horn, 642 F.3d 126, 143 (3d Cir. 2011)(an

"insufficiently informed" decision not to strike a tainted juror based on counsel's "feeling" that the juror could be fair was not a reasonable strategic choice).

The decision in Chappee v. Vose, 843 F.2d 25 (1st Cir. 1988), provides a useful counterpoint. There, the defendant was charged with possessing cocaine, and the proof was overwhelming. At trial, defense counsel cross-examined the government's chemist in an effort to show that the laboratory's testing procedures could not distinguish cocaine L (a controlled substance derived from the coca leaf) from cocaine D (a synthetic product which arguably was not controlled). When the chemist's testimony was complete, defense counsel sought to call his own experts to support an "isomer defense." Finding that defense counsel had deliberately withheld the names of the witnesses in violation of the reciprocal discovery rules, the trial court precluded their testimony. The defendant presented no defense and was convicted.

On appeal, the defendant argued that his trial counsel had rendered ineffective assistance. The Court of Appeals rejected the claim. It found that "defense counsel's concealment of [his experts] . . . was a planned maneuver" and "a forethought tactical decision." Id. at 34. Faced with "desperate" circumstances, counsel had tried a "back-alley trick." Id. Thus, "[u]nwise and unscrupulous though it may have been," defense counsel's strategy was not "entirely outside the wide range of reasonable professional assistance." Id.

Merely to state the facts of Chappee is to recognize that it is light-years from this case. No one could fairly describe the conduct of Mr. Parse's trial counsel as a "planned maneuver," a "forethought tactical decision," or a "back-alley trick." Their decision was a "tragic misjudgment." Cf. Bohan v. Kulmann, 234 F. Supp. 2d 231, 277 (S.D.N.Y. 2002)(counsel's "oversight [was] more consistent with incompetent advocacy . . . than with

6

intentional manipulation").[5]  Although otherwise thorough and highly professional, they "neglect[ed] to tie off . . . a glaring loose end." Op. 31; see also id. at 34 ("[i]n a fateful decision, uncharacteristic of their conduct throughout the case, Parse's attorneys decided to call off any further investigation" and take no other action). Plainly, such neglect was outside the range of the professional assistance one expects from an effective advocate.

### 3. Prejudice

The prejudice analysis is also straightforward. As the Eighth Circuit has observed, "[t]rying a defendant before a biased jury is akin to providing him no trial at all; [i]t constitutes a fundamental defect in the trial mechanism itself." Johnson v. Armontrout, 961 F.2d 748, 755 (8th Cir. 1992); accord Parker v. Gladden, 385 U.S. 363, 366 (1966)(a defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors"). Here, Mr. Parse was tried by a jury that included a mentally unstable woman who was incapable of weighing the evidence or applying the law, who had a preexisting bias against lawyers and who saw herself as a partisan for the government.[6] As this Court concluded, "[t]he presence of such a tainted juror, who cannot appreciate the meaning of an oath, is simply intolerable." (Op. 47).

> The Fifth Circuit has put the point well:
>
> The jury box is a holy place. Our criminal justice system is predicated on the notion that those accused of criminal offenses are innocent until proven guilty and are entitled to a jury of persons willing and able to consider fairly the evidence presented in order to reach a determination of guilt or innocence . . . . The process-failure [from seating a partial juror] stems as much from the unknown as the known . . . . [W]e cannot know the effect [a

---

[5]  At the end of its opinion, the Court wrote that Mr. Parse's lawyers "gambled on the jury they had." (Op. 64). There is nothing in the opinion, however, to suggest that the Court was using that evocative language to mean that the lawyers had kept Conrad on the jury to gain a tactical advantage or to game the system. The lawyers thought too little, not too much.

[6]  Mr. Parse was not a lawyer, but the heart of his defense was that he had relied on experienced tax lawyers.

7

> partial juror's] bias had on the ability of the remaining . . . jurors to consider and deliberate, fairly and impartially, upon the testimony and evidence presented at . . . trial . . . . <u>By law</u> [the defendant is] prejudiced by the presence of [a] partial juror[] in violation of his [constitutional] rights.

<u>Virgil v. Dretke</u>, 446 F.3d 598, 613-14 (5th Cir. 2006) (emphasis added).

Nor is this a case in which the presence of a partial juror can be overlooked because the evidence was so strong that a guilty verdict was foreordained. Quite the opposite is true. The jury acquitted Mr. Parse of the conspiracy count and of <u>all</u> of the substantive tax evasion charges and convicted him on the mail fraud count and the obstruction count (counts which encompassed much the same conduct as the acquitted counts), so that what occurred was undoubtedly a compromise verdict. That the jury struggled over Mr. Parse's fate is not surprising. He inherited the job of broker on the Jenkens transactions after joining Deutsche Bank in 1995 and knew that the bank had reviewed and approved the transactions. He was present when Daugerdas and other lawyers told clients (and often their sophisticated advisors) that the strategies exploited an anomaly in the tax code and were lawful. And unlike Daugerdas, Guerin and Field, he did not receive outsized fees (tied to the client's tax benefit) for his services. Thus, one searches the record in vain for testimony showing that Mr. Parse knew that a tax fraud was afoot.

To be sure, the proof showed that Mr. Parse was involved in correcting transactions after the end of the tax year and that the Jenkens lawyers took advantage of the corrections to violate the annual accounting rule. But even here, the proof against him was underwhelming. No documents were destroyed or redacted. <u>Compare</u> Trial Tr. 2535 (Mayer altered assignment documents by "[b]asically whiting out the date" and putting in an earlier date to gain a tax shelter benefit for a client). Each new transaction appeared on a Deutsche Bank account statement on the day it occurred with an "as of" notation to indicate that an earlier error

8

was being corrected. Moreover, as Carrie Yackee testified, the requisite approvals for the corrective transactions were obtained in each instance. Most importantly, Mr. Parse relied on lawyers at respected firms to determine the tax consequences of the corrections. He did not give tax advice to clients or prepare their returns. Surely, on these facts, there exists a very reasonable probability that the outcome of Mr. Parse's trial would have been different had Catherine Conrad not been a juror. See Strickland, 466 U.S. at 696 ("a verdict . . . only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support").

Any doubt on this score is resolved by Conrad's post-trial letter to the government. In her letter, Conrad reported that the jury had had "qualms with Mr. David Parse"; that she wanted "to convict [him] 100%"; and that she "did fight the good fight" but ultimately "had to throw in the towel." Thus, the letter makes clear that Conrad worked diligently to persuade her fellow jurors to convict Mr. Parse of something and eventually succeeded in her effort. He was the object of her partisan attention. In short, Conrad's own words speak volumes about the prejudice that Mr. Parse suffered.

D.  <u>Conclusion</u>

For these reasons, Mr. Parse's motion for a new trial based on ineffective assistance of counsel should be granted.

Dated: New York, New York
       August 7, 2012

Respectfully submitted,

_____
Paul Shechtman
Elena Steiger Reich
ZUCKERMAN SPAEDER LLP
1185 Avenue of the Americas, 31st Floor
New York, NY 10036
(212) 704-9600
pshechtman@zuckerman.com

Attorneys for Defendant David Parse