D3MJPARS                          Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                           09 Cr. 581 WHP

5   DAVID K. PARSE, et al.,

6               Defendants.

7   ------------------------------x

8

9                                        March 22, 2013
                                         2:30 p.m.
10
    Before:
11
                    HON. WILLIAM H. PAULEY III,
12
                                         District Judge
13

14                        APPEARANCES

15  PREET BHARARA,
         United States Attorney for the
16       Southern District of New York
    STANLEY J. OKULA, JR.,
17  JASON HERNANDEZ,
         Assistant United States Attorneys
18       – and –
    NANETTE DAVIS, Esq.
19       U.S. Department of Justice – Tax Divison

20  ZUCKERMAN SPAEDER, LLP,
         Attorneys for defendant Parse
21  BY:  PAUL L. SCHECHTMAN, Esq.
                    Of counsel
22
    Also Present:
23       CHRISTINE MAZZELLA,
         Special Agent IRS
24

25

D3MJPARS                          Sentence

```
 1              (In open court)

 2              (Case called)

 3              THE COURT:  Good afternoon.  Please be seated.  I note

 4     Mr. Parse's presence at counsel table.

 5              This matter is on for sentencing.  Are the parties

 6     ready to proceed?

 7              MS. DAVIS:  We are, your Honor.

 8              MR. SHECHTMAN:  We are, your Honor.

 9              THE COURT:  Mr. Shechtman, have you reviewed with your

10     client the presentence investigation report?

11              MR. SHECHTMAN:  I have, sir.

12              THE COURT:  Are there any factual matters in the

13     report that you believe warrant modification or correction?

14              MR. SHECHTMAN:  No.  The factual matters I think have

15     all been corrected.  The other matters your Honor is aware of

16     from correspondence.

17              THE COURT:  I am, yes.  Ms. Davis, are there any

18     factual matters in the presentence report that the government

19     believes warrant modification or correction?

20              MS. DAVIS:  No, your Honor.

21              THE COURT:  All right.  Let me begin by saying I have

22     reviewed all the parties' submissions including Mr. Shechtman's

23     submission this morning concerning two arguments that he simply

24     is preserving for appeal.  With that said, Mr. Shechtman, do

25     you wish to be heard?
```

1          MR. SHECHTMAN:  I do, Judge.

2          Judge, I do not know your Honor well, but I note two

3     things to be true, two things that I believe are relevant to

4     sentencing today.

5          THE COURT:  Mr. Shechtman, for my benefit as well as

6     everyone else's, would you use the microphone.

7          MR. SHECHTMAN:  I thought I was.  I apologize.

8          THE COURT:  That is all right.

9          MR. SHECHTMAN:  First, I know your Honor holds lawyers

10    to high standards, understandably so.  With a law degree comes

11    a commitment to practice ethically and above all, to respect

12    the law.

13         What makes this case so disheartening is that high

14    powered tax lawyers abandon their obligation to the law.  Their

15    conduct, in my view, is plain to me and the courts as well was

16    indefensible.  I can only hope and ask in sentencing David

17    Parse, you do not put him in their category.  He was not a tax

18    lawyer.  He did not design these shelters.  He did not market

19    them.  His judgment may not have been perfect, but that can be

20    said of his superiors at Deutsche Bank who approved the bank's

21    participation in these shelters and it can be said of many

22    other brokers who effected similar trades but have been spared

23    Mr. Parse's fate.

24         At sentencing, a judge compares the conduct of one man

25    or one woman against that of another, one crime against

D3MJPARS                      Sentence

another, one life against another.  Putting David Parse in the

same category with Paul Daugerdas or Donna Guerin, I

respectfully submit, is the wrong comparison.

        The second thing I know is that your Honor has read

every word of my sentencing submission and the letters attached

to it and you have already thought long and hard about

Mr. Parse's sentence.  That is a good reason for me to keep my

remarks short.

        In my submission I tried to show that David Parse was

a good man, a man who cares deeply about his family, his

friends, his community.  I hope I have persuaded you that

Mr. Parse is a fundamentally decent man, and more importantly,

I hope I have persuaded you that he is at the periphery in

terms of culpability of this criminal scheme.

        I hope I have persuaded you of that because I believe

it.  Permit me two more observations.  The first involves

acquitted conduct.  Your Honor will decide today how to read

the jury's verdict.  The parties have gone back and forth on

that.  You know my view.  I would only add this:

        When I started practicing in this Court, we tried 15

percent of criminal cases.  Today that number is closer to 3

percent.  Trials matter.  Acquittals matter.  If a defendant

who is acquitted of the overarching tax conspiracy like

Mr. Parse was is treated as if he was convicted of it,

incentives to try cases will be dulled further.

1        In her submission, Ms. Davis told the jury this about

2   Mr. Parse, and I quote:

3        "The back-dating alone is enough for you to conclude

4   that a crime was committed.  Whether or not the shelters had

5   economic substance, under the law it is illegal to falsify the

6   dates of a transaction to gain a tax advantage, which is what

7   was done here."

8        Judge, whether that was done here is not today's

9   quarrel, but I believe the jury listened to those words.  I

10  believe it convicted Mr. Parse on the basis of those three

11  transactions and I ask the court to sentence him accordingly.

12       The second observation is this:  I recognize that

13  those who commit white collar crimes must be punished.  Their

14  crimes harm society as much as violent ones, but

15  proportionality and parsimony are the cornerstones of a just

16  sentence and a just society.  What is being asked for today, I

17  submit, fails those tests.

18       As your Honor knows, each day a person is

19  incarcerated, he suffers real deprivations, his children grow

20  up, his loved ones drift away, his employment opportunities

21  fade.  Even a short separation from family and loved ones is

22  real punishment.  Judge, David Parse does not deserve the type

23  of sentence that is being called for here.  I submit it would

24  be unjust.  Thank your Honor.

25       THE COURT:  Thank you, Mr. Shechtman.

D3MJPARS                          Sentence

1          Ms. Davis.

2          MS. DAVIS:  Good afternoon, your Honor.

3          Mr. Shechtman said that trials matter and acquittals

4   matter, but here convictions matter, too.  That is why we are

5   here for sentencing.  What Mr. Parse was convicted of was a

6   broad ranging tax fraud that can be called the largest tax

7   fraud in history, and I want to emphasize, your Honor,

8   Mr. Parse was not a peripheral player in this.

9          For without the investments that he and his cohort

10  Brubaker implemented at Deutsche Bank, these tax fraud shelters

11  would not and could not have happened.  I don't think it is too

12  much to say the investments are the fulcrum of this tax fraud.

13  It was the key to any argument to be had by the tax lawyers.

14          There is no question that Mr. Parse's participation in

15  this conduct was voluntary, it was willful, it was unlawful and

16  it was knowing, and it is for these reasons we ask for a

17  significant term of prison time.

18          I certainly don't quarrel with Mr. Shechtman in terms

19  of his statement about the damage that prison time inflicts on

20  the loved ones and the career prospects of a convicted

21  defendant.  However, that is true for every convicted defendant

22  that comes through these doors.

23          With regard to the nature of the crime, I will say

24  this.  The scope of this tax fraud, your Honor, was truly

25  staggering.  Certainly from the Internal Revenue Service's

D3MJPARS                        Sentence

1    perspective and Department of Justice's perspective, it

2    required absolutely unbelievable amounts of time and resources

3    to prosecute not just this case, but to also handle all the

4    civil cases that are coming and are still out there being

5    litigated in many district courts, in tax court, Court of

6    Federal Claims and will continue no doubt to be litigated for

7    years to come.

8          We urge very strongly your Honor to impose a

9    significant term of imprisonment for a very basic reason.  Just

10   that with a white collar criminal so often the calculus is can

11   I get away with it?  And if I can't, what is going to happen to

12   me?

13         If the answer is only you will have to pay some sort

14   of sum of money in terms of penalty or restitution, we submit

15   that that sends the wrong message, and that is not a message

16   that is going to deter a white collar criminal like David

17   Parse.

18         It is especially acute in a tax case like this where

19   the very discovery of the crime was extremely difficult, in

20   that the product, if you will, was designed with layers of

21   complex entities, transfers, financial products that make it

22   extremely difficult to find out what is happening even if you

23   know the scope of the transaction itself which wasn't

24   self-evident at the beginning of this process, your Honor, for

25   the Internal Revenue Service.

D3MJPARS                          Sentence

1            I can certainly answer any questions you might have

2       with regard to the specific arguments Mr. Shechtman raised with

3       regard to his objections to the presentence report, but we

4       submit that a significant term of imprisonment for Mr. Parse's

5       flagrant, enduring and criminal conduct for success of the

6       criminal venture is warranted in this case.

7            Thank you.

8            THE COURT:  I do have a couple of questions for both

9       of you regarding forfeiture in particular.

10           Can the government explain to me the difference in

11      forfeiture amount that it sought and obtained from Ms. Guerin

12      in the amount of $1.6 million and that which the government

13      requests here from Mr. Parse of 146 million?

14           MS. DAVIS:  Your Honor, the forfeiture component with

15      Ms. Guerin was a negotiated point that was, frankly, an

16      important point for them in order to come to the table, and we

17      negotiated it down, to be honest.  We're in a different posture

18      with Mr. Parse.

19           THE COURT:  So I should impose a $146 million

20      forfeiture on Mr. Parse when the government agreed that 1.6

21      million was sufficient from Ms. Guerin?

22           MS. DAVIS:  One moment.

23           (Off-the-record discussion)

24           MS. DAVIS:  One of our considerations, your Honor, in

25      reaching that agreement with Ms. Guerin was it was money in

1   hand that she produced at sentencing, as you know, that it

2   relieves us of responsibility both of litigating the forfeiture

3   issue and going after assets.

4          That is not the case here.  Under the law, we believe

5   we can ask for the full amount of forfeiture.

6          THE COURT:  How did the government arrive at the $146

7   million figure?

8          MS. DAVIS:  That's the proceeds, the fees proceeds, if

9   you will, your Honor, that went into the pockets of the

10  defendants as we have articulated in our sentencing papers.

11         THE COURT:  Specifically how much does the government

12  contend that Mr. Parse personally benefited from this scheme?

13         MS. DAVIS:  $3 million, your Honor.

14         THE COURT:  You've reviewed the presentence report,

15  right?

16         MS. DAVIS:  Yes, of course, your Honor.

17         THE COURT:  Did the government make any inquiry as to

18  how Mrs. Parse, who is a stay-at-home mother, could have $3.6

19  million in her personal securities account?

20         MS. DAVIS:  I am sorry.  When you say did we make any

21  inquire as to how that could be?

22         THE COURT:  Yes.  When you were investigating this

23  case, you've looked at the assets report by the Parses in the

24  presentence report, right?

25         MS. DAVIS:  Yes.

D3MJPARS                         Sentence

1              THE COURT:  You were present at the sentencing hearing

2        that I conducted a couple of weeks ago regarding Ms. Guerin,

3        right?

4              MS. DAVIS:  Yes, your Honor.

5              THE COURT:  It shouldn't come as a surprise to you

6        that I would be interested to know what the result of the

7        government's inquiry was during its investigation as to where

8        that substantial wealth that Mrs. Parse has came from, would

9        it?

10             MR. OKULA:  I am sorry, your Honor.

11             (Off-the-record discussion)

12             MS. DAVIS:  We did not do specific tracing of the

13       funds that went into her securities account, but given that she

14       is a stay-at-home mother and wife and the fact that he was

15       earning substantial amounts from both his Deutsche Bank days

16       but also his subsequent brokerage days, it is reasonable to

17       infer the funds that went into the securities account derived

18       from his work activities.

19             THE COURT:  With all your investigative resources, you

20       didn't attempt to ascertain whether those funds were part of

21       the $3 million in illicit gains that the government says

22       Mr. Parse obtained?

23             MS. DAVIS:  We did not.  We were not able to ascertain

24       that, your Honor.

25             THE COURT:  All right.  Thank you.

D3MJPARS                         Sentence

          MS. DAVIS:  Thank you.

          THE COURT:  Mr. Shechtman, I have a couple of

questions for you on this issue as well.

          MR. SHECHTMAN:  Yes, your Honor.

          THE COURT:  Can you offer the court any explanation as

to why the bulk of Mr. Parse's assets are in Mrs. Parse's name?

          MR. SHECHTMAN:  I can offer the following, your Honor:

     What I know is that they were moved there well prior

to indictment.  I am not sure that -- I know the court may not

look upon the following sentence in the way that Mr. Parse did

at the time.  They were moved there with discussion with his

then counsel, who said the movement was appropriate.  They were

obviously fully disclosed to Probation, and so that's the short

answer to the question.

     There is no doubt, your Honor, that those were monies

that were derived from Mr. Parse's, largely derived from

Mr. Parse's work at Deutsche Bank.  His wife has worked at

least I think through 2000, 2001, had significant

responsibilities, but for much of the period after that she was

a home-maker and had, as you know, illnesses that prevented her

from working full time.  I hope that is a fair answer to the

question.

          THE COURT:  Have all of Mr. Parse's legal fees in

connection with this matter been paid by Deutsche Bank?

          MR. SHECHTMAN:  Yes, your Honor.

1      THE COURT:  Can you approximate for me the magnitude

2  of the fees that Deutsche Bank has paid on Mr. Parse's behalf?

3      MR. SHECHTMAN:  I can tell you what mine are.  Again I

4  can't begin to guess what the Brune firms are.  They are far in

5  excess of mine.  Mine are in the neighborhood of $300,000.  My

6  firm says I don't bill enough.

7      THE COURT:  Is Deutsche Bank, do you know whether

8  Deutsche Bank has a continuing obligation to pay Mr. Parse's

9  legal fees after sentencing?

10      MR. SHECHTMAN:  I think the answer, your Honor, I

11  don't know whether they have a continuing legal obligation.

12  They have told me they're committed to doing so.

13      THE COURT:  All right.  Thank you.

14      MR. SHECHTMAN:  Judge, with some temerity, may I say

15  one thing, which is I could be wrong?

16      I think at the end, end of the day, your central

17  question is what did the jury convict of, and I didn't mean in

18  my remarks to suggest that Mr. Parse wasn't critical to all of

19  this in the sense you can't get to the bottom line here unless

20  you have a digital option trade or a short or whatever it may

21  be.

22      What Ms. Davis said was without the trades that he and

23  Mr. Brubaker affected, this tax conspiracy could not have

24  occurred.  That one cannot deny.  We do know Mr. Brubaker was

25  acquitted, and I think Mr. Parse was acquitted of knowing that

D3MJPARS                        Sentence

1    these tax schemes had no economic substance and that his

2    conviction here was just, just the three transactions.  I have

3    said it in my papers, but I wanted to make sure I said it one

4    more time.

5         THE COURT:  Before you sit down, has there been any

6    material change in Mr. Parse's financial condition since the

7    presentence report reports his condition as of last August?

8         MR. SHECHTMAN:  Judge, he has lived off of savings,

9    but lived modestly.  So there is no significant increase in

10   assets, and the reduction, you can take his living expenses and

11   multiply by X.  I think the short answer is not really.

12        THE COURT:  Thank you.

13        Mr. Shechtman, at this time does your client wish to

14   address the court?

15        MR. SHECHTMAN:  Yes, your Honor.

16        THE COURT:  Very well.

17        THE DEFENDANT:  Judge Pauley, I have tried to live my

18   life personally and professionally in a proper manner.  I was

19   raised to value hard work and to respect others.  My wife and I

20   have tried to raise our children with those same values.  Those

21   are the values I tried to teach other children as well.

22        I never dreamed that I would be standing here today

23   before a federal judge facing sentencing for felony

24   convictions.  I regret not seeing things for what they truly

25   were.  I know that whatever my sentence, you have given it

D3MJPARS                         Sentence

1    great thought, and I thank you for that.

2            THE COURT:   The defendant, David Parse, comes before

3    this Court following his conviction after a jury trial in this

4    district of two crimes, the corrupt endeavor to obstruct and

5    impede the administration of the Internal Revenue laws and the

6    crime of mail fraud.   Both are serious offenses against the

7    United States.

8            Turning first to the guidelines calculations, the

9    parties dispute the guideline calculation concerning the

10   corrupt endeavor to obstruct the Internal Revenue laws as

11   charged in Count 20 and mail fraud as charged in Count 25.

12           In his letter to Probation, Parse contends that, "A

13   fair reading of the jury's verdict is that he was convicted

14   only for his role in the three instances of fraudulent

15   backdating," and he advances the same argument in his

16   submissions to this Court.

17           Parse's argument rests on Juror No. 1, Katherine

18   Conrad's letter to the government.   There Conrad stated that,

19   "She solely held out for two days on the conspiracy charge for

20   Parse, and when she couldn't sway the jury to her position that

21   the 'backdating' was enough for the other charges."

22           But Conrad is a monstrous liar.   Her blatant perjury

23   on every matter of substance makes everything she says under

24   oath or in a letter utterly meaningless.   That Parse would seek

25   to credit anything she might have to say is just too thin a

D3MJPARS                          Sentence

1   reed.  Conrad simply cannot be relied on for anything of

2   importance let alone a window into the jury's collective mind.

3          While her letter evidences a bias toward the

4   government, it did not pierce the veil of secrecy that

5   surrounds jury deliberations, and this Court declines the

6   invitation to view Conrad's letter as some indication of the

7   mindset of all the other jurors who faithfully served.

8          As charged, Count 20 holds Parse responsible for the

9   corrupt endeavor to obstruct and impede the administration of

10  the Internal Revenue laws from 1994 through October of 2005,

11  and Count 25 holds Parse responsible for the mail fraud scheme

12  during the same time period.

13         Section 1B1.3 of the guidelines requires this Court,

14  in calculating the base offense level, to account for Parse's

15  criminal acts, all foreseeable, reasonably foreseeable acts of

16  others in furtherance of the jointly undertaken criminal

17  activity and all of the harms that resulted from those acts.

18         Parse's involvement in the corrupt endeavor was not

19  limited to the backdating of three transactions.  He helped

20  execute the complicated options structured in the SOS, Homer

21  and swaps fraudulent tax shelter transactions and he brought

22  clients to Jenkens & Gilchrist.  His meeting in Toledo, Ohio

23  with Dean Kasperzak, Daugerdas and others is emblematic of his

24  involvement in the corrupt scheme.

25         The testimony at trial regarding that meeting

D3MJPARS                        Sentence

1    establishes that Parse knew that Kasperzak was seeking to avoid

2    taxes, that Daugerdas was selling him a fraudulent tax shelter,

3    that Kasperzak would lie about it if the government ever

4    challenged it and that Parse would execute the transactions.

5    Parse was also aware of the scope of the fraudulent tax shelter

6    scheme.

7           Accordingly, this Court calculates his base offense

8    level consistent with the harm that resulted from his acts and

9    the reasonably foreseeable acts of others in furtherance of the

10   scheme.   Thus, I find that Probation properly calculated the

11   tax loss amount as $1,630,166,343.00, and this Court adopts

12   that calculation and assigns a base offense level of 36.

13          Turning to sophisticated means, building on his

14   earlier argument, Parse asserts that the backdating did not

15   involve sophisticated means, but as this Court observed,

16   backdating was just one of Parse's many criminal acts.   Parse

17   also helped to execute the SOS, Homer and swaps tax shelter

18   transactions, the sales and investments within the shelters and

19   steered clients to Jenkens & Gilchrist.

20          This Court observed during Guerin's sentencing that

21   the scheme involved the creation of LLC's and other entities

22   to, "hide the ball."   The scheme was complex and sophisticated.

23   Section 2T1.1 (b)(2) provides for a two-level increase if the

24   offense involved sophisticated means.   This enhancement applies

25   to the offense, not the characteristics of an individual

D3MJPARS                       Sentence

1   defendant.  See United States versus Lewis, 93 F.3d 1075, 1084

2   (2d Cir. 1996).  The rule in Lewis is broad and covers Parse's

3   conduct.  Accordingly, the enhancement for sophisticated means

4   applies.

5        Turning to special skills, Section 3B1.3 of the

6   guidelines provides for a two-level increase if the defendant

7   used a special skill in a manner that significantly facilitated

8   the commission or concealment of the offense.  Parse, a CPA and

9   stockbroker, used his training, education and experience to

10  help design the option transactions, explained them at length

11  with multiple customers, and used his skills to backdate three

12  transactions.  That his assistant executed them is

13  inconsequential.

14       His skills were used in designing the options in the

15  first place, and the enhancement for special skills applies.

16  Thus, the total offense level is 40.  This is Mr. Parse's first

17  criminal conviction, and so his criminal history category is a

18  I.  That yields a guideline range of 292 to 365 months, but the

19  maximum statutory term for these crimes is a total of 276

20  months.

21       Now, this Court adopts the findings of fact in the

22  presentence report as my own, and I will cause the report to be

23  docketed and filed under seal as part of the record in this

24  case.

25       Turning to the restitution issue, the mandatory Victim

D3MJPARS                     Sentence

Restitution Act of 1996 requires the imposition of restitution equal to the amount of actual loss suffered by the victim, here the Internal Revenue Service.  See United States versus Carboni, 204 F.3d 39, 47 (2d Cir. 2000).  The amount of loss is calculated as of the date of sentencing and includes prejudgment interest.  See United States versus Quirashi, 634 F.3d 699, 703-704 (2d Cir. 2011).

          Pursuant to 26 U.S.C. Sections 6621 and 6622, the interest is compounded daily at a quarterly-determined rate equal to the federal short term rate plus 3 percent.  The parties agree that the restitution calculation submitted by the government is mathematically correct.  This Court adopts those math calculations as its own; and, accordingly, the total amount of restitution, including prejudgment interest, is $231,660,534.00.

          In addition, this Court may, "make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."  That is 3664 (h).

          Parse played a central and long-standing role in the criminal scheme, but his contribution to the tax loss is not the same as Guerin's.  He did not train others to follow in his footsteps.  Parse profited the least of the others in the scheme, reaping only 2 percent of the total profits they made.

D3MJPARS                         Sentence

Unlike Guerin, this Court is not left to wonder where the money
is.  Because of that, this Court will not hold Parse
responsible for the full amount of restitution and instead will
set an apportioned restitution amount for him.

I'm going to fix a restitution amount that is 50
percent of the restitution amounts that were fixed for Guerin.
As the government noted in its submission, its calculation with
respect to Ms. Guerin was itself erroneous, but that's history.

So I am going to make Parse responsible jointly and
severally with Guerin and any co-conspirator sentenced in the
future to 50 percent of $190,355,836.00.  In addition, Parse is
also jointly and severally liable with any co-conspirator
sentenced in the future, but not Guerin, to the additional
corrected prejudgment interest that has accrued for those
losses in the amount of $294,027.00.

In addition, Parse is also jointly and severally
liable with any co-conspirator sentenced in the future, but not
Guerin, to the additional prejudgment interest that has accrued
for those losses in the amount of $206,839.00.

Finally, Parse is jointly and severally liable with
any co-conspirator sentenced in the future, but not Guerin, for
the additional base loss amount associated with additional
losses from Arthur Frigo in the amount of $20,151,484.00.

With respect to forfeiture, this Court is imposing an
order of forfeiture on Mr. Parse in the amount of $1 million.

D3MJPARS                          Sentence

1              Now, turning to the custodial part of the sentence,

2    Oliver Wendell Holmes famously wrote taxes are the price we pay

3    for a civilized society.  This case reveals the bizarre lengths

4    that some super-wealthy individuals will go to in order to

5    avoid their obligation as citizens.  The tax shelter fraud

6    scheme perpetrated by Parse and others was breathtaking in its

7    scope and in the damage to our nation, nearly a billion in

8    fraudulent tax benefit claims and more than 1.5 billion in lost

9    tax revenue to the United States.  It corrupted numerous

10   professionals including attorneys, accountants and financial

11   advisors.  It involved some of our largest financial,

12   accounting and legal firms including Deutsche Bank, BDO Seidman

13   and Jenkens & Gilchrist.

14             Because of the complexity of the scheme, its success

15   relied on the unethical and criminal behavior of highly

16   educated, highly compensated professionals like Mr. Parse.

17   Lawyers and accountants became willing tools for the

18   ultra-wealthy to avoid paying their fair share of taxes, and

19   these professionals flagrantly violated their professional

20   responsibilities in order to line their pockets.

21             As I've observed before, this case is all about greed.

22   Parse played an essential role in the scheme, helping to

23   execute the tax shelter transactions and referring clients.

24   Parse wasn't the mastermind, but without him the tax shelters

25   would be little more than talking points.  Daugerdas and Guerin

D3MJPARS                        Sentence

1    needed a willing banker who would execute the trades according

2    to their carefully selected financial devices.  They needed an

3    unethical banker who would violate the most fundamental

4    principles of his chosen profession -- accounting -- to further

5    their scheme, and they needed a reputable banker who had no

6    qualms as he listened to an attorney counsel a client to lie.

7         They found all of those flaws in David Parse.  Aside

8    from his criminal endeavor, Parse appears to have lived the

9    American dream.  He grew up in a blue collar family, worked

10   hard and by all accounts was successful.  In mid-life Parse was

11   a respected banker and investment adviser at one of the largest

12   banks in the world.  He had a stable marriage and three sons.

13   He lived a Norman Rockwell existence in an upscale community.

14        Parse is described in the submissions I've read as

15   always being there for his children and actively involved in

16   their activities.  Parse's friends and family characterize him

17   as a role model and Parse has volunteered thousands of hours of

18   his personal time to coaching youngsters.

19        His commitment to his community is not a ploy for

20   sentencing.  Rather it says something profound about the kind

21   of man he is.  This Court understands from the presentence

22   report that Mr. Parse has shielded his sons from the specifics

23   of this case.  That is completely understandable.  They're

24   young and they should enjoy the innocence of childhood.

25        Well, Mr. Parse, this Court did not expect you to

D3MJPARS                              Sentence

accept responsibility in your remarks here today, and you

exercised your constitutional right to a trial, and this Court

will not penalize you for invoking that right, but this Court

hopes that in the future when you discuss this case, your

conviction and your sentence with your children, that you'll

explain it honestly and accept the jury's judgment.  You can

teach your children a valuable lesson in taking responsibility

and seeking redemption.  This Court hopes that when that moment

arrives, that you'll fulfill your parental obligation to be a

role model and live up to the narrative that your friends and

family have presented in their letters to this Court.

          Your selflessness towards friends and family is

obvious.  Unfortunately, it was your selfishness that brings

you here today.  You didn't need the money you gained from this

corrupt scheme.  You already had more than enough to live a

very comfortable life, but you got caught up with the multitude

and joined them in the scheme, and you even tried to shield

your ill-gotten gains by participating in one of the fraudulent

tax shelters yourself.  You sat mute when your co-defendant

told your banking client to lie if he was ever questioned by

the government.

          What on earth were you thinking?

          Certainly you knew that if your criminal acts were

discovered, the consequences would be severe and you knew you'd

run the risk of forfeiting your freedom, but undoubtedly you

D3MJPARS                          Sentence

1  thought you'd never get caught.  The law of money and your

2  belief you were all too clever to get caught overwhelmed your

3  sense of what is right and wrong.

4        There is a compelling need for general deterrence.

5  Indeed, many of the professionals involved in this tax shelter

6  fraud scheme were not charged, nor were the super-wealthy tax

7  cheats, but that reality merely underscores the importance of

8  general deterrence for tax shelter fraud schemes.  You could

9  have assisted the government in its investigation, but you

10  chose not to, and you were willing to let your clients lie to

11  the government.

12        In the end, that allowed the scheme to continue and

13  facilitated the loss of more than a billion dollars in revenue

14  and the expenditure of what are undoubtedly tens of millions of

15  dollars in investigation and prosecution of this case and all

16  of the related cases.

17        I have tried in my remarks to you to draw together all

18  of the factors under Section 3553; the severity of these

19  offenses, the damage they do, the need for deterrence, both

20  specific and general, your role in this overall scheme and your

21  own family circumstances, and it is against that backdrop that

22  this Court is prepared to impose a sentence on you.

23        Mr. Parse, I ask you to stand.

24        Mr. Parse, I for one do not feel a sentence in the

25  guideline range is appropriate nor do I share the government's

D3MJPARS                          Sentence

1  view that a sentence like the sentence that I gave Ms. Guerin

2  is appropriate, but your acts were serious and you need to be

3  sentenced to a significant term to reflect those compelling

4  facts.

5          It's my judgment that you be sentenced to a total term

6  of 42 months of imprisonment, 36 months on Count 20 and 42

7  months on Count 25, to be served concurrently, to be followed

8  by one year of supervised release on Count 20 and three years

9  of supervised release on Count 25, also to be served

10 concurrently.

11         I am also going to impose on you a mandatory $200.00

12 special assessment.

13         With respect to the restitution that I have imposed, I

14 am going to require you as a condition of supervised release to

15 pay 20 percent of your gross monthly income during the period

16 of your supervised release toward the restitution that I have

17 imposed on you.

18         I will impose all of the standard conditions of

19 supervised release as well as that special condition that you

20 pay restitution.  There is a further special condition that you

21 provide your probation officer with access to any requested

22 financial records during the period of your supervised release

23 and that you not incur any new obligations unless you are in

24 compliance with your installment payment schedule during the

25 term of your supervised release.

D3MJPARS                          Sentence

1          This, Mr. Parse, represents the sentence of this

2     Court.  I advise you that you have the right to appeal this

3     sentence.  I advise you further that if you cannot afford

4     counsel, counsel will be provided to you free of charge.

5          Mr. Shechtman has done nothing less than an eloquent

6     job in representing you in connection with this sentencing and

7     I am confident that he'll advise you further with respect to

8     your appellate rights.  You may be seated, sir.

9          Are there any further applications by the parties?

10         MR. SHECHTMAN:  There is, Judge.  There is the

11    question of bail pending appeal.  The criteria, if understand

12    them right, are flight and the burden is on us, but I don't

13    think there is a real flight issue here and the existence of a

14    substantial issue.  I don't need to tell the court what that

15    means.

16         I think there are substantial issues here.  I think

17    the post-trial motions that were filed are far from frivolous.

18    I think they are ones that reasonable people can disagree

19    about.  I have spoken to the government about this.  I don't

20    want to put words in their mouth, but I think they consent

21    about pending appeal under the circumstances, and I ask the

22    court to bring it.

23         MS. DAVIS:  Given the relatively unique nature of the

24    post-trial motions for new trial regarding Juror No. 1, we have

25    consented to his application for bail pending appeal, but only

D3MJPARS                          Sentence

1    on that basis.

2              THE COURT:  All right.  I want to add one other facet

3    to the judgment of conviction here, and that is that the

4    direction that Mr. Parse, prior to his surrender date, whatever

5    date that may be, tender to the United States $500,000 as an

6    initial installment toward restitution.  I am going to include

7    that as a feature of the judgment, so I will not fix any date

8    for Mr. Parse's surrender.

9              For the record, what are the current bail conditions,

10   Ms. Davis?

11             (Off-the-record discussion)

12             MR. SHECHTMAN:  Judge, my understanding is it is

13   $500,000.  It is secured by Mr. Parse's home which there is a

14   lien on.  We ask that be continued.

15             MS. DAVIS:  That is my recollection as well and we

16   concur with that as adequate at this point.

17             THE COURT:  The same travel restrictions will enure;

18   that is, his travel is limited to the Continental United States

19   as it was fixed previously and his passport has been

20   surrendered and there will be no applications for travel

21   documents.

22             MR. SHECHTMAN:  That is understood.

23             THE COURT:  Mr. Parse, sir, do you understand that all

24   of those conditions are going to continue to apply pending

25   appeal and that the violation of any of those conditions could

1   result in severe penalties against you?

2            THE DEFENDANT:  Yes, your Honor, I do understand.

3            THE COURT:  Very well, sir.

4            Is there anything further?

5            MR. SHECHTMAN:  No.  Did your Honor put a date on the

6   payment of that first installment?

7            THE COURT:  Well, the date I put was before he

8   surrenders.

9            MR. SHECHTMAN:  That is understood completely.

10           THE COURT:  Before he surrenders.

11           MR. SHECHTMAN:  That is eminently fair and reasonable.

12  We thank the Court.

13           THE COURT:  Is there anything further from the

14  government?

15           MS. DAVIS:  No, your Honor.

16           THE COURT:  This matter is concluded.

17           (Court adjourned)

18

19

20

21

22

23

24

25